**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | * | **CASE NO. 19-12367** |
| **CAPE QUARRY, LLC,** | * | **SEC. "A"** |
| DEBTOR. | * | **CHAPTER 11** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER**
**(I) CONFIRMING FINAL MODIFIED CHAPTER 11 PLAN OF REORGANIZATION**
**OF CAPE QUARRY, LLC PROPOSED BY HOLDERS OF THE DIP LOAN CLAIM,**
**CELTIC CLAIM AND MILNER PREPETITION CLAIM, AS OF SEPTEMBER 25, 2020,**
**AS FINALLY AND IMMATERIALLY AMENDED AND (II) DENYING**
**CONFIRMATION OF THE QUARRY AGGREGATES PLAN**

This Court held a hearing on Friday, November 6, 2020, at 1:00 p.m. (the "Confirmation Hearing") to consider confirmation of (i) the *Final Modified Chapter 11 Plan of Reorganization of Cape Quarry, LLC Proposed by Holders of the DIP Loan Claim, Celtic Claim and Milner Prepetition Claim, as of September 25, 2020* (the "Senior Creditors Plan"), [ECF Doc. 127]; and (ii) the Chapter 11 Third Amended Plan of Reorganization of Quarry Aggregated (the "QA Plan"), [ECF Doc. 122], filed by Quarry Aggregates, LLC ("Quarry Aggregates"). Although the Court entered an Order on October 2, 2019, directing joint administration of the affiliated bankruptcy cases of Dominion Group, LLC, and Cape Quarry, LLC, [No. 19-12366, ECF Doc. 58; No. 19-12367, ECF Doc. 48], the two plans before the Court relate only to the case and estate of Cape Quarry, LLC ("Debtor" or "Cape Quarry"), except as discussed below.

The Holders of the DIP Loan Claim, the Celtic Claim, and the Milner Prepetition Claim as defined herein and in the Senior Creditors' Plan (the "Senior Creditor Plan Proponents") proceeded at the Confirmation Hearing jointly with the Official Committee of Unsecured Creditors appointed for the Cape Quarry Case (the "Committee") (with the Senior Creditor Plan Proponents,

collectively, the "Joint Parties").  Quarry Aggregates is a third-party entity that proposed the QA Plan with the support of William Cline, III ("Cline"), an officer of Cape Quarry.

These *Findings of Fact and Conclusions of Law* (the "Findings of Fact and Conclusions of Law") are entered in support of the Court's contemporaneously issued *Order (i) Confirming Final Modified Chapter 11 Plan of Reorganization of Cape Quarry, LLC Proposed by Holders of the DIP Loan Claim, Celtic Claim, and Milner Prepetition Claim, as of September 25, 2020, as Finally and Immaterially Amended; and (ii) Denying Confirmation of the Quarry Aggregated Plan* (the "Confirmation Order").

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]**

**A.      Filing Date**.  On September 3, 2019 (the "Petition Date"), Cape Quarry filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, as did affiliate Dominion Group, LLC ("Dominion").  Both the Senior Creditors Plan and the QA Plan relate only to Cape Quarry, except as discussed below.  Cape Quarry was and continues to be eligible for relief under 11 U.S.C. § 109.

**B.      Jurisdiction; Venue**.  The Court has jurisdiction over this chapter 11 case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  Confirmation of a plan of reorganization is a core proceeding under to 28 U.S.C. § 157(b)(2)(L).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This Court has authority to issue the Confirmation Order as a final order.

---

[1]      These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

**C.**        **Committee Formation**.   On October 29, 2020, the Office of the United States Trustee ("UST") appointed the Committee pursuant to 11 U.S.C. § 1102.  [No. 19-12366, ECF Doc. 111].  No committee was appointed in the Dominion case.

**D.**        **Solicitation and Notice**.   After notice and hearing, this Court approved the *Amended Joint Disclosure Statement To Accompany Chapter 11 Plans of Reorganization*, [ECF Doc. 132], and issued an Order on October 5, 2020 (the "Order Approving Disclosure Statement"), [ECF Doc. 136].  On October 6, 2020, the Debtor served a copy of the Order Approving Disclosure Statement on all parties in interest and supplied copies of the competing Plans, Disclosure Statement, and forms of Ballot on all creditors solicited to vote in accordance with the Order Approving Disclosure Statement and applicable Bankruptcy Rules.  [ECF Doc. 139].  That notice was adequate under the circumstances.  No other or further notice is necessary or required.

**E.**        **Appointment of Examiner**.  On September 25, 2020, this Court ordered the appointment of an examiner in this case.  [ECF Doc. 125].  On that same date, the UST appointed David V. Adler as examiner ("Examiner").  [ECF Doc. 126].  At the Confirmation Hearing, the Examiner offered his two ballot tabulations:

    (i)    *Amended # Ballot Summary and Certification for the Chapter 11 Third Amended Chapter 11 Plan of Reorganization of Quarry Aggregates* ("QA Plan Ballot Tabulation"), [ECF Doc. 184]; and

    (ii)    *Amended # Ballot Summary and Chapter 11 Plan Filed By the DIP Lender, Holder of the Celtic Claim and the Milner Prepetition Claim* ("Senior Creditors Plan Ballot Tabulation"), [ECF Doc. 185].

The QA Ballot Tabulation shows that no impaired class solicited to vote accepted the QA Plan.  The Senior Creditors Plan Ballot Tabulation shows that all impaired classes solicited to vote accepted the Senior Creditors Plan.

**F.**        **Modifications of the Senior Creditors Plan**.   At the Confirmation Hearing, the Senior Creditors Plan Proponents presented the Court with an exhibit showing in redline form the

modifications to the version of their Plan filed on September 25, 2020 (the <u>Senior Creditors Plan</u> <u>Modifications</u>).  *See* **Joint Parties Ex. Z**; [ECF Doc. 127].  Those modifications were made in large part to resolve the UST's objection to the Senior Creditors Plan, (the "<u>UST Objection to</u> <u>Senior Creditors Plan</u>"), [ECF Doc. 177].  Additional immaterial modifications have been presented to the Court via filing of a *Notice of Filing of Final Modified Chapter 11 Plan of Reorganization of Cape Quarry, LLC Proposed by Holders of the DIP Loan Claim, Celtic Claim and Milner Prepetition Claim, as of September 25, 2020 as Finally and Immaterially Amended and of Changes Contained Therein*, and a redlined version of the Senior Creditor Plan.  [ECF Doc. 191].

"A modification is *material* if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988) (quoting 8 COLLIER ON BANKRUPTCY ¶ 3019.03 (15th ed. 1987)).  Thus, an improvement to the position of the creditors affected by the modification will not require resolicitation of a modified plan.  *See In re Mangia Pizza Invs., LP*, 480 B.R. 669, 689 (Bankr. W.D. Tex. 2012) ("[A]nyone who voted to accept the previous plan will be deemed to have accepted the modified plan if the modified plan 'does not adversely change the treatment of [that creditor's] claim.'" (quoting *In re Dow Corning Corp.*, 237 B.R. 374, 378 (E.D. Mich. 1999))).  Nor will a modification that is determined to be immaterial require re-solicitation.

The Court has reviewed the Senior Creditors Plan Modifications and concludes that such modifications are immaterial and do not adversely affect the treatment of any claim against, or equity interest in, the Debtor under the Plan.  Because the Senior Creditors Plan Proponents made no material and adverse modifications, resolicitation is unnecessary and acceptances of the Senior

Creditors Plan should be deemed acceptances of that plan as modified. Counsel for the UST withdrew the UST Objection to Senior Creditors Plan in open court. Therefore, in accordance with 11 U.S.C. § 1127 and Bankruptcy Rule 3019, all holders of claims or equity interests who voted to accept the Senior Creditors Plan are deemed to have accepted the Senior Creditors Plan, as modified, and no holder of a claim or equity interest that has voted to accept the Senior Creditors Plan shall be permitted to change its acceptance to a rejection. Further, any modifications to that plan that are included in the Confirmation Order are immaterial and do not affect the voting as reflected in the Senior Creditors Plan Ballot Tabulation.

G. **No Additional Disclosure**. Pursuant to Bankruptcy Rule 3019, the Senior Creditors Plan Modifications do not require additional disclosure under 11 U.S.C. § 1125 or the re-solicitation of votes under 11 U.S.C. § 1126, nor do they require that the holders of claims or equity interests be afforded an opportunity to change previously cast acceptances or rejections of the Senior Creditors Plan, as they comply with 11 U.S.C. § 1127 and Bankruptcy Rule 3019.

H. **Judicial Notice**. The Court takes judicial notice of the docket maintained in these jointly administered Chapter 11 Cases by the Clerk of Court, including, without limitation, all pleadings and other documents filed, all Orders entered, and all evidence and arguments made, proffered, or adduced at hearings in the jointly administered cases of Dominion and Cape Quarry. Certain Exhibits are dealt with and accepted as evidence on the basis of this Court accepting filed and docketed pleadings as exhibits by reference, without the necessity of any party separately submitting them for consideration; and the Court may refer to other pleadings of record herein.[2]

---

[2] Those documents include, without limitation: (i) *Final Amended Chapter 11 Plan as of September 25, 2020 Proposed by Holders Of The Dip Loan Claim, Celtic Claim And Milner Prepetition Claim*, [ECF Doc. 127] (designated **Exhibit AA**); (ii) *Amended Disclosure Statement Amended Joint Disclosure Statement to Accompany Chapter 11 Plans of Reorganization*, [ECF Doc. 132] (designated **Exhibit BB**); (iii) *Amended # Ballot Summary and Certification for the Chapter 11 Third Amended Plan of Reorganization for Quarry Aggregates*, [ECF Doc. 184] (designated **Exhibit CC**); (iv) *Amended # Ballot*

**I.** **Voting**. Votes on the Plan were solicited after disclosure of "adequate information" as defined in 11 U.S.C. § 1125. As evidenced by the two Ballot Tabulations and the representations/testimony of the Examiner at the Confirmation Hearing, votes to accept or reject the two plans before the Court have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Order Approving Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules. No party filed any pleading seeking to challenge either Ballot Tabulation.

**J.** **Ballot Tabulations QA Plan**. As reflected in the QA Plan Ballot Tabulation, pursuant to 11 U.S.C. §§ 1124 and 1126: (i) Class 3 ("Milner Claim") unanimously voted to reject the Plan; (ii) Class 4 ("Celtic Claim") unanimously voted to reject the Plan; and (iii) Class 5 ("Cape Quarry Unsecured Creditors") voted as follows: - four (4) creditors holding an aggregate of $10,374.48 in voting claims voted to accept and four (4) creditors holding an aggregate of $356,712.19 in voting claims voted to reject. [ECF Doc. 184]. Under the QA Plan, the equity interests in Cape Quarry are to be extinguished, so that class is deemed to reject. *See* 11 U.S.C. § 1126(g). All classes of creditors were impaired under the QA Plan. No class of impaired creditors voted to accept the QA Plan by voting as required under 11 U.S.C. § 1126(c). There was no impaired class that did not vote.

**K.** **Ballot Tabulation Senior Creditors Plan**. As reflected in the Senior Creditors Plan Ballot Tabulation, pursuant to 11 U.S.C. §§ 1124 and 1126: (i) Class 1 ("Milner Claim")

---

*Summary and Certification for the Final Modified Chapter 11 Plan Filed by the DIP Lender, Holder of the Celtic Claim and the Milner Prepetition Claim*, [ECF Doc. 185] (designated **Exhibit DD**); (v) *Schedule E/F: Creditors Who Have Unsecured Claims*, [ECF Doc. 55] (designated **Exhibit EE**); (vi) *Declaration Under Penalty of Perjury for Non-Individual Debtors*, [ECF Doc. 58] (designated **Exhibit FF**); (vii) Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, [ECF Doc. 59], (designated **Exhibit GG**); (viii) *Joint Objection to Confirmation of Quarry Aggregates Plan by Holders of the DIP Loan Claim, the Celtic Claim and the Milner Prepetition Claim, and Official Committee of Unsecured Creditors*, [ECF Doc. 179] (designated **Exhibit HH**); and the Order of this Court dated October 16, 2020, [ECF Doc. 155].

unanimously voted to accept the Plan; (ii) Class 2 ("Celtic Claim") unanimously voted to accept the Plan; and (iii) Class 3 ("Cape Quarry Unsecured Creditors") voted as follows: - five (5) creditors holding an aggregate of $385,399.19 in voting claims voted to accept and three (3) creditors holding an aggregate of $5,640.36 in voting claims voted to reject. Under the Senior Creditors' Plan, the equity interests in Cape Quarry are to be extinguished, so that class is deemed to reject. *See* 11 U.S.C. § 1126(g). All classes of creditors were impaired under the Senior Creditors Plan. All classes entitled to vote voted to accept the QA Plan by voting as required under 11 U.S.C. § 1126(c).

**L.** **Objections to Confirmation**. There were four objections to confirmation filed. The UST filed the UST Objection to Senior Creditors Plan, but withdrew it at the Confirmation Hearing. The UST also filed an objection to the QA Plan ("UST Objection to QA Plan"). [ECF Doc. 175]. The Joint Parties filed a *Joint Objection to Confirmation of Quarry Aggregates Plan by Holders of the DIP Loan Claim, the Celtic Claim and the Milner Prepetition Claim, and Official Committee of Unsecured Creditors* (the "Joint Objection"). [ECF Doc. 179]. Quarry Aggregates objected to the Senior Creditor Plan (the "QA Objection"). [ECF doc. 180].

**M.** **Threshold Issues**. The threshold issues, both raised by the Joint Objection, concerned: (a) Quarry Aggregates' standing (a) to file a plan pursuant to 11 U.S.C. § 1121(c) and (b) to object to the Senior Creditors Plan pursuant to 11 U.S.C. § 1128(b); and (ii) the absence of an impaired accepting class of solicited classes regarding the QA Plan as required by 11 U.S.C. § 1129(a)(10). Quarry Aggregates did not respond to the objections raised in the Joint Objection regarding its standing to submit a plan and to object to the Senior Creditors Plan.

**N.** **Quarry Aggregates' Standing To File a Plan or Object to Confirmation.** The Court considered whether Quarry Aggregates has standing within this bankruptcy case to present

a plan pursuant to § 1121(c) or to object to a plan pursuant to § 1128(b).  Section 1121(c) provides

the non-exclusive list of parties other than the debtor with standing to file a plan, and the

circumstances under which such parties may file a plan.[3]    It is clear that parties other than the

Debtor could file plans in this case, as the Debtor's exclusivity period had lapsed.

1. **Quarry Aggregates Failed To Comply With This Court's Order Concerning**

**Filing of Witness and Exhibit Lists**.  On November 2, 2020 this Court held a hearing on the

Committee's motion to compel responses to discovery submitted to Quarry Aggregates.  In the

process of resolving that motion, the Court noted that Quarry Aggregates had not filed its witness

and exhibit list on October 30, 2020, as required by this Court's Order of September 23, 2020 (the

"Scheduling Order"), [ECF Doc. 121], and advised Quarry Aggregates through counsel that failure

to comply with the Scheduling Order filing deadline could result in a ruling at hearing on

confirmation that Quarry Aggregates would be precluded from calling witnesses.  Later on the

afternoon of November 2, 2020, counsel for Quarry Aggregates filed its *Witness and Exhibit List.*

[ECF Doc. 174].  Quarry Aggregates did not seek leave of court to file the witness and exhibit list

late, and has provided the Court with no explanation for why it failed to comply with the

---

[3]        Section 1121 of the Bankruptcy Code governing "[w]ho may file a plan" states:

(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity
security holders' committee, a creditor, an equity security holder, or any indenture trustee,
may file a plan if and only if—

(1)  a trustee has been appointed under this chapter;

(2)  the debtor has not filed a plan before 120 days after the date of the order for
relief under this chapter; or

(3)  the debtor has not filed a plan that has been accepted, before 180 days after the
date of the order for relief under this chapter, by each class of claims or
interests that is impaired under the plan.

11 U.S.C. 1121(c).

Scheduling Order.  The witness and exhibit list provided only one document, the QA Plan.  The witnesses listed were Darius Moore, Cline, and Todd Hass, a representative of Chiron Financial, the Debtor's financial advisor.

The failure to comply with this Court's Scheduling Order factored in part in forming the basis upon which the Court found that Quarry Aggregates could not call Darius Moore as a witness to establish standing, did not have standing to file a plan, and did not have standing to prosecute the QA Objection.

2.  **The Standing Issue Was Raised as Early as September 21, 2020, and Raised Subsequently**.  The Senior Creditor Plan Proponents first raised the standing issue on September 21, 2020, in their Response to Quarry Aggregates' objection to the Senior Creditor Plan Proponents' plan and disclosure statement.  [ECF Doc. 108].  The standing issue was also raised on November 2, 2020, in the Joint Objection, [ECF Doc. 179], and again in the Senior Creditors Plan Proponents' Plan Fact Sheet attached to the Disclosure Statement.  [ECF Docs. 192 & 193].

3.  **Quarry Aggregates Has Never Filed a Pleading in this Case Asserting Its Basis for Standing Under § 1121(c) or § 1128(b)**.  The Court has reviewed all versions of the QA Plan, [ECF Docs. 99, 114 & 122], and has reviewed the QA Plan Fact Sheet attached to the Disclosure Statement, [ECF Doc. 192].  Nowhere within those documents does Quarry Aggregates attempt to show that it qualifies as a party in interest with standing to file a plan under § 1121(c) or to object to confirmation pursuant to § 1128(b).

4.  **The Evidence Before the Court Establishes that Quarry Aggregates Is Not a Party In Interest With Standing To File a Plan or Object To Confirmation of the Senior Creditors Plan**.  The evidence before the Court establishes that Quarry Aggregates is not a party expressly provided standing to propose a plan pursuant to § 1121(c) or to object to a plan pursuant

to § 1128(b). It is not "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. §§ 1121(c). Nor is it a "party in interest" as that term is defined in 11 U.S.C. § 1109(b), the section of the Bankruptcy Code governing the "right to be heard," as it is not "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." "Although § 1109(b) ought to be construed broadly, if a party is not affected by the reorganization process it should not be considered a party in interest." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989). "Only those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard." *Id.* "Moreover, it is important that a bankruptcy court is not too facile in granting applications for standing." *Id.* at 850. "Overly lenient standards may potentially over-burden the reorganization process allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." *Id.* Indeed, "[g]ranting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently." *Id.* at 851 (internal quotations and citations omitted).

At the confirmation hearing, counsel asserted that Quarry Aggregates has standing in this case because it is a creditor of the Debtor. But the record and public documents indicate that Quarry Aggregates was formed post-petition on August 7, 2020, [ECF Doc. 179 & Exs. A–B]; **Joint Parties Ex. Y**, and, as of the Confirmation Hearing Quarry Aggregates, had not filed a proof of claim against the Debtor's estate.[4] Nothing in the record as of the Confirmation Hearing date

---

[4] On November 12, almost a week after the Confirmation Hearing, Quarry Aggregates filed a proof of claim against the estate asserting an unsecured claim in the amount of #33,900.00 and listing the basis of the claim as "money loaned ordinary expenses." No. 19-12367, Proof of Claim No. 27. The proof of claim attached a November 1, 2020, Bill of Sale between Top Level Construction and Maintenance, LLC

indicated that Quarry Aggregates holds a claim that has arisen from post-petition events. *See* 11 U.S.C. §§ 101(A) & (B); *see also In re Cypresswood Land Partners, I*, 409 B.R. 396, 415–16 (Bankr. S.D. Tex. 2009). Therefore, Quarry Aggregates is not a creditor of the Debtor.

The only connection between Quarry Aggregates and Cape Quarry that, under the QA Plan, Cline, who is currently an officer of the Debtor, would serve as a director and officer of the reorganized Cape Quarry should that plan be confirmed by this Court. *See* QA Plan, at 32. The record indicates that Cline is not an equity holder of the Debtor. Although Cline is an officer of the Debtor, the Debtor is owned by two limited liability companies. According the Debtor's Disclosure Statement approved by this Court:

> Joe William Cline, III ("Cline") and Wesley David Robert ("Robert") formed the Dominion Group on September 11, 2017 and Cape Quarry on August 25, 2017. . . . At the time of formation, Cline's juridical entity, Hardstock, LLC ("Hardstock") owned fifty (50) percent of Dominion membership units and Robert's juridical entity, Baranof Strategic Services, LLC ("Baranof") owned the remaining fifty (50) percent of Dominion membership units. Cape Quarry is a wholly owned subsidiary of Dominion.

> Effective December 3, 2018, Cline and Robert agreed to adjust ownership of Dominion to reflect additional capital contributions according to the records made by Cline. The adjustment resulted in Hardstock owning ninety-nine (99) percent of Dominion membership units, with Baranof owning the remaining one (1) percent of membership units. . . .

---

("Top Level") and Quarry Aggregates for the purchase of "[a]ll of [Top Level's] interest in its claim against Cape Quarry, LLC." *Id.* The Bill of Sale was signed by Darius Moore as President for both Top Level and Quarry Aggregates. *See id.* The Debtor did not schedule Top Level as a prepetition creditor and Top Level did not file a proof of claim against the estate. "[W]hile at risk of stating the obvious, a proof of claim only deals with pre-petition claims of a creditor." *In re Taco Bueno Rest., Inc*., 606 B.R. 289, 301 (Bankr. N.D. Tex. 2019). To the extent Quarry Aggregates desires to assert a post-petition administrative expense claim against the estate, the Fifth Circuit requires a § 503(b) application to be filed in the main case; filing a proof of claim is wholly inappropriate. *See NL Indus., Inc. v. GHR Energy Corp*., 940 F.2d 957, 966 (5th Cir. 1991); *In re Taco Bueno Rest., Inc*., 606 B.R. at 301. Indeed, "[t]he national Official Form 410 for all proofs of claim, by its own instructions, states that this form does not apply to administrative-expense claims and only deals with pre-petition amounts." *In re Taco Bueno Rest., Inc*., 606 B.R. at 301. Regardless, Quarry Aggregates filed no information, pleadings, proofs of claim, or § 503(b) applications regarding any claim it asserts to possess against the estate prior to the Confirmation Hearing; therefore, this Court cannot consider its November 12 proof of claim in its determination of Quarry Aggregates' § 1109 standing.

ECF Doc. 132, at 7; *see also* **Exhibit FF** & **Exhibit GG**. Although Cline may be a principal or an officer in Quarry Aggregates, neither Cline nor Quarry Aggregates is an equity holder in the Debtor such that would confer standing to participate in these proceedings. *See Su v. Offshore Grp. Inv. Ltd. (In re Vantage Drilling Int'l)*, 603 B.R. 538, 545–46 (D. Del. 2019).[5]

"For those entities that do not fit within the seven enumerated categories of § 1109(b), but still want to gain 'party in interest' status, they must look to case law." *In re Cypresswood Land Partners I*, 409 B.R. at 416 (citation omitted). That is, the entity must show that it has constitutional and prudential standing: Can it demonstrate and injury-in-fact—some specific, identifiable trifle of injury or personal stake in the outcome of the litigation that is fairly traceable to the proposed plan of reorganization? As explained by the *Cypresswood Land Partners* court:

> Over several decades of jurisprudence, the Supreme Court has formulated a two-component test to enable the federal courts to determine the standing of complainants before them. Such parties must demonstrate both constitutional and prudential standing.
>
> . . . To meet the requirement of constitutional standing, [a party] must show that it has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent; fairly traceable to the challenged action of the [opposing party]; and likely to be redressed by a favorable decision. The party must have such a *personal stake* in the outcome of the controversy as to assure . . . concrete adverseness. The injury-in-fact must be palpable, though this requirement is not onerous. The injury need not be current; even a threatened injury will suffice.
>
> Once a party has met these constitutional requirements, its standing may yet be challenged on three 'prudential' grounds . . . . A complainant's bid for standing may be defeated if: (a) it is asserting a third party's rights; (b) it alleges a generalized grievance rather than an injury particular to it; or (c) it asets an injury outside the zone of interest the statute was designed to protect.

---

[5]      The meaning of "party in interest" as used in § 1121(c) is the same as it is used in §§ 1109 and 1128(b).  *See El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 417 (Bankr. D.P.R. 2006) ("The concept of 'party in interest' under sections 1109(b) and 1121(c) are the same."); *In re Cypresswood Land Partners, I*, 409 B.R. at 418 ("[B]ecause [the entity] has no constitutional standing, [it] is not a party in interest under § 1109(b); therefore, [it] has no standing to object to the Amended Plan under § 1128(b).").

*Id.* at 416–17 (quoting *In re A.P.I., Inc.*, 331 B.R. 828, 857–88 (Bankr. D. Minn. 2005)).  And, indeed, "[b]ankruptcy standing requires a 'statement of or identification  of a pecuniary or an economic interest before this court that is susceptible to redress and as to which  parties should be able and afforded an opportunity to address the Bankruptcy Court."  *In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (D. Del. 2019); *see also Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018) ("The narrow inquiry for bankruptcy standing—known as the 'person aggrieved' test—is 'more exacting' than the test for Article III standing." (citations omitted)).

At the Confirmation Hearing, this Court sustained the objection of the Joint Parties and precluded Quarry Aggregates from soliciting testimony from Darius Moore regarding standing and from proffering evidence on that subject.  Quarry Aggregates had declined to brief the issue in advance, chose not to follow this Court's Scheduling Order regarding submission and exchange of witness and exhibit lists, and the witness list it did submit untimely gave no indication that Moore would be expected to testify as to standing and it identified no exhibits purported to show Quarry Aggregates' standing.  The Court reaffirms that ruling here.

Because Quarry Aggregates provided no evidence at all to demonstrate a concrete actual or imminent injury-in-fact or show that a favorable decision from this Court would redress any injury to Quarry Aggregates, this Court finds that Quarry Aggregates has no statutory or constitutional standing to be heard in this case.  It is, therefore, not a party in interest that may file a plan under § 1121(c) or object to a plan of confirmation under § 1128(b).

**O.**      **<u>Failure To Obtain an Accepting Impaired Class</u>**.  The QA Plan Ballot Tabulation establishes that Quarry Aggregates has not obtained an accepting class of impaired claims as required by 11 U.S.C. § 1129(a)(10).  The QA Plan, therefore, is not confirmable as a matter of

law confirmation must be denied.  *See In re Polytherm Indus., Inc.*, 33 B.R. 823, 833–36 (W.D. Wis. 1983) (holding that "§ 1129(a)(10) requires the affirmative acceptance of at least one impaired class of creditors to to be determined without the votes of any insiders in the class").  As explained by the *Polytherm Industries* court:

> Ideally, a reorganization plan will be the product of debtor-creditor cooperation and will serve both sides' interests.  However, if the debtor and creditors fail to agree on the reorganization plan as signified by dissension of creditors classes, the cramdown device may permit confirmation of the plan if the plan adequately protects the dissenting classes according to 11 U.S.C. § 1129(b).  Section 1129(a)(10) creates an impediment to resort to the cramdown authority and, as such, it can frustrate a debtor's interest in adopting a given plan.  However, if no class of creditors agrees to the plan, it would not be equitable to impose acceptance of the plan upon the creditors by enforcing the debtor's interest in confirmation of the plan through the cramdown authority.  The point is, if no impaired class accepts the plan, the debtor has failed to negotiate effectively with its creditors in devising a reorganization plan.

*Id.* at 836; *see also Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tuscon (In re Hotel Assocs. of Tucson)*, 165 B.R. 470, 474 (B.A.P. 9th Cir. 1994)  ("Under Bankruptcy Code [§] 1129(a)(10), a plan cannot be confirmed unless at least one 'impaired class' accepts the plan, excluding acceptance by any insider."); *Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 501 (4th Cir. 1991) ("Before a plan can be crammed down, at least one noninsider impaired class of claims must vote to accept it."); *Willows Convalescent Ctrs. Ltd. P'ship v. Unum Life Ins. Co. (In re Willows Convalescent Ctrs. Ltd. P'ship*, 151 B.R. 220, 222 (D. Minn. 1991) ("Under section 1129(a)(10), a debtor's plan cannot be confirmed unless at least one 'impaired class' accepts the plan, excluding acceptance by any insider.").

Because the QA Plan did not obtain an accepting class of impaired claims as required by 11 U.S.C. § 1129(a)(10), this Court found at the Confirmation Hearing that the QA Plan was not confirmable as a matter of law, and that Quarry Aggregates could not proceed to seek confirmation through the Confirmation Hearing.

**THE COURT, THEREFORE, ISSUES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDERLYING CONFIRMATION OF THE SENIOR CREDITORS PLAN:**

P.        **Bankruptcy Rule 3016**.  The Senior Creditors Plan (hereafter referred to as the "Plan") is dated and identifies the Plan Sponsor, thereby satisfying Bankruptcy Rule 3016(a).  The filing and noticing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

Q.        **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**.  As further detailed below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

R.        **Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1))**.  Article IV of the Plan designates the following six (6) Classes of Claims and Equity Interests:

Class 1 - Milner Prepetition Claim

Class 2 - Celtic Claim

Class 3 - Cape Quarry General Unsecured Creditors

Class 4 - Intercompany Claims

Class 5 - Contingent Claims

Class 6 - Existing Equity Interests.

Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests in such Class and such classifications were otherwise acceptable to each voting Class.  Valid business, legal, and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan and such claims are of a different rank, status, or character, as the case may be, and the creation of such

Classes does not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies §§ 1122 and 1123(a)(1).

**S.** **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**. Article IV of the Plan designates Classes 1–6 as Impaired by the Plan within the meaning of § 1124 of the Bankruptcy Code. Articles 4.1 through 4.6 of the Plan specify the treatment of Claims and Existing Equity Interests in such Classes. The Plan, therefore, satisfies § 1123(a)(3).

**T.** **No Discrimination (11 U.S.C. § 1123(a)(4))**. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed or agrees to a less favorable treatment on account of such Claim or Equity Interest. The Plan, therefore, satisfies § 1123(a)(4).

**U.** **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**. The Plan provides adequate and proper means for the implementation of the Plan in Articles VI ("Administration, Implementation And Execution Of This Plan") and VII ("Corporate Governance And Management Of The Reorganized Cape Quarry") as required by § 1123(a)(5). Under the Plan, the Reorganized Cape Quarry will maintain all privileges of the Debtor, which will assist in implementation of the Plan. See Plan, art. 6.6. The Plan, therefore, satisfies § 1123(a)(5).

**V.** **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)**. Article 7.3 of the Plan provides for amended articles of organization to preclude issuance of non-voting equity securities, and **Joint Parties Exhibit A** (draft amended articles of organization) expressly include such a prohibition. As well, **Joint Parties Exhibit B** (draft amended operating agreement of Reorganized Cape Quarry) expressly allocates voting power according to percentages of ownership, and provides for only one layer of ownership, such that there are no preferential voting rights. The Plan, therefore, complies with § 1123(a)(6).

**W.** **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))**.  The identities and affiliations of any and all persons proposed to serve as of the Effective Date as a manager of the Reorganized Debtors, were disclosed at, or before, the Confirmation Hearing in compliance with applicable law, and as well the compensation to be paid is set forth within the Plan.  The foregoing is consistent with the interests of Holders of Claims and Holders of Equity Interests and with public policy.  As such, the Plan satisfies Bankruptcy Code § 1123(a)(7).  *See* **Joint Parties Exhibits A, B, and C**.

**X.** **Additional Plan Provisions (11 U.S.C. § 1123(b))**.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1123(b).  The failure to address a provision of the Bankruptcy Code specifically in these Findings of Fact and Conclusions of Law or the Confirmation Order shall not diminish or impair the effectiveness of the Confirmation Order.

**Y.** **Impairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1))**. As contemplated by § 1123(b)(1), all Classes are Impaired by the Plan.  Accordingly, the Plan is not inconsistent with § 1123(b)(1).

**Z.** **Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))**. In accordance with § 1123(b)(2), Article X of the Plan provides that, subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be deemed rejected unless specifically assumed.  According to **Joint Parties Exhibit I** (List of Assumed Contracts), the Reorganized Cape Quarry is assuming only one contract, that being the post-petition agreement with Rigid Constructors, a principal of NEWCO Holdings.  *See* **Joint Parties Exhibit W**.  Accordingly, the Plan is consistent with § 1123(b)(2).

**AA.**        **Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))**. In accordance with § 1123(b)(3)(A) and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the settlements and  the provisions of the Plan constitute a good-faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims or Equity Interests may have with respect to any Allowed Claim or Equity Interest or any distribution to be made on account of such Allowed Claim or Equity Interest.  Each of the Released Parties has contributed significant value to the Debtor, the Plan, and the reorganizational efforts that warrant the releases. For example, the Holder of the Milner Prepetition Claim (i) has agreed to a reduction of such Claim for purposes of the Milner Post-Effective Date Loan in the amount of $133,333.00, to provide further payment to Class 3 Unsecured Claims so that it is projected that Class 3 Holders will be paid in full; (ii) has agreed, along with the Holder of the Celtic Claim, to release Dominion from its liability under the Milner Prepetition Claim and the Celtic Claim, upon fulfillment of the Dominion Equipment Transfer, as defined in the Plan; (iii) did not call a default under the DIP Loan despite default; and (iv) agreed to an Effective Date loan as opposed to foreclosing his Liens and extinguishing all claims and interests subordinate to the Liens securing such Claim.  The principals of NEWCO funded the Reserves, providing $2 million in cash for payment toward the Administrative Expense Claims and the Milner Prepetition Claim.  NEWCO Holdings and the owners of the NEWCO principals are to be the guarantors under the Third Party Guarantees of the Milner Post-Effective Date Loan, and one of the NEWCO principals is providing a Lien upon its property to secure payment of the Third Party Guarantees.  *See* **Joint Parties Exhibits D, E, F, T, and U**.  Such agreements and considerations for compromise and settlement are fair, equitable, and reasonable and in the best interests of the Debtor and its Estate.

The releases of the Released Parties, as defined in the Plan, are an integral component of the Plan and are approved.  The definition of Releasing Party in the Plan, as defined therein, is reasonable, appropriately limited, and establishes a process by which the releases contained within the Plan are consensual and voluntary and fully comply with applicable law.  The definitions of Released Parties and Releasing Parties, as modified, are found in **Joint Parties Exhibit Z**.  Each of the Released Parties: (a) made a substantial and valuable contribution to the Debtor's restructuring and the Estate and (b) invested significant time and effort to make the restructuring a success and preserve the value of the Debtor's Estates.  The releases of the Released Parties as contained in the Plan have the consent (including deemed consent) of the Debtor and the Releasing Parties and are in the best interests of the estates.  As mentioned, the UST has withdrawn the UST Objection to Senior Creditors Plan.  As well, the exculpations set forth in the Plan are an essential and integral provision of the Plan and are appropriate under applicable law because they are proposed in good faith, were formulated following extensive good faith, arms' length negotiations with key constituents, and are appropriately limited in scope.  The revised definition of Exculpated Parties is found at **Joint Parties Exhibit Z**.

**BB.**    **Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4))**.  The Plan, does not provide for the sale of all or substantially all assets of the Debtor.

**CC.**    **Modification of Creditor Rights (11 U.S.C. § 1123(b)(5))**.  In accordance with § 1123(b)(5), Article IV of the Plan modifies the rights of Holders of Claims in Classes 1 through 6.  Accordingly, the Plan is consistent with § 1123(b)(5).

**DD.**    **Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**.  The Senior Creditors Plan Proponents and the Debtor have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Order Approving Disclosure Statement,

including §§ 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019, thus satisfying the requirements of § 1129(a)(2).

**EE.** **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. The Senior Creditors Plan Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with § 1129(a)(3). The Senior Creditors Plan Proponents' good faith is evident from the record of this case, including the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in this case. The Plan is based upon extensive, arm's-length negotiations between and among the Senior Creditors Plan Proponents, counsel for the Debtor, counsel for the Committee, and counsel for the UST, each of which participated in good faith, and represents the culmination of months of intensive negotiations and discussions among all parties in interest. Moreover, the Plan is proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and effectuating a successful reorganization of Cape Quarry, and should effectuate full payment to Classes 1, 2, and 3. The issuance of the New Equity Interests under the Plan as of the Effective date will be of fair and equivalent value, and will constitute a non-avoidable transfer, as such issuance is the principal basis upon which the Restructuring Transactions are grounded. Further, the exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arm's length, are consistent with §§ 105, 362, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary and appropriate to the successful reorganization of the Debtor's Estate. Accordingly, the Plan and the related documents have been filed in good faith and the Senior Creditors Plan Proponents have satisfied their obligations under § 1129(a)(3).

**FF.**        __Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))__.   All payments made or to be made by the Debtor or Reorganized Debtor for services or for costs and expenses in connection with the representation of the Debtor's estate within this Chapter 11 Case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of, the Court as reasonable, as required by §§ 327, 328, 329 and 300 of the Bankruptcy Code, thereby satisfying § 1129(a)(4).

**GG.**        __Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))__.   The Plan satisfies § 1129(a)(5).  It provides that at Confirmation, the terms of the current officers and managers of the Debtor will automatically expire.  The Senior Creditors Plan Proponents have disclosed in the Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of managers.  *See* **Joint Parties Exhibits A, B, and C**.  Section 1129(a)(5)(A)(ii) directs the Court to ensure that the post-confirmation governance of the Reorganized Debtors is in "good hands."  *See In re The Landing Assocs., Ltd.*, 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("Under § 1129(a)(5) the plan proponent must disclose the identity of the individuals that will manage the business post-confirmation, and the participation of these individuals in the debtor's business must be consistent with the interests of creditors.  In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.").  The appointment to such office of individuals, Cody Fortier and Andre P. Smith, is consistent with the interests of creditors and with public policy.  No manager or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, and the Senior Creditors' Plan Proponents have disclosed the nature of any compensation to be paid to the managers of the Reorganized Debtor.  Accordingly, the Senior Creditors' Plan Proponents have satisfied the requirements of § 1129(a)(5).

**HH.**     **No Rate Changes (11 U.S.C. § 1129(a)(6))**.     No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtor.  Thus, § 1129(a)(6) is not applicable.

**II.**     **Best Interest of Creditors (11 U.S.C. § 1129(a)(7))**.     The Plan satisfies § 1129(a)(7) (the best interests of creditors test) because each Holder of a Claim or Equity Interest either:  (a) has voted to accept the Plan; or (b) shall receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code on such date.  The test requires "that each holder of an impaired class of claims or interests receives at least what it would have received if the debtor were liquidated under Chapter 7." *CHS, Inc. v. Plaquemines Holdings, L.L.C.*, 735 F.3d 231, 239 (5th Cir. 2013).  Both plans considered by this Court provided to extinguish the equity in Cape Quarry.  In fact, the Senior Creditors Plan Proponents used the liquidation analysis filed by Quarry Aggregates, which shows no equity value.  Further, there is no objection to confirmation of the Senior Creditors Plan grounded in valuation and the absolute priority rule.  Given this, the record including **Joint Parties Exhibit V**, and the proffered testimony of Cody Fortier and Andre P. Smith, the Court finds and concludes that the Plan satisfies § 1129(a)(7).

**JJ.**     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**.     As is set forth in the Ballot Tabulation, Classes 1, 2, and 3 have affirmatively voted to accept the Plan.  As such, § 1129(a)(8) of the Bankruptcy Code is satisfied with respect to these Classes of Claims.  Class 4 (Intercompany Claims), Class 5 (Contingent Claims), and Class 6 (Equity Interests) are deemed to reject the Plan pursuant to § 1126(g) of the Bankruptcy Code because the holders of Claims and Equity Interests in Classes 4, 5, and Class 6 will not receive or retain any property on account of

their Claims against or Equity Interests in the Debtors.  The Plan may nevertheless be confirmed because the Plan otherwise satisfies all elements of § 1129(a) and satisfies § 1129(b) of the Bankruptcy Code with respect to these Classes because the Plan does not discriminate unfairly and is fair and equitable.  There are no objections raised to the deemed rejection treatment of Classes 4, 5, and 6.

**KK.**     **Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))**.  The treatment of Administrative Expense Claims and Priority Tax Claims under to Article II of the Plan satisfies the requirements of § 1129(a)(9)(C).

**LL.**     **Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))**.  Classes 1, 2, and 3 are Impaired under the Plan, were entitled to vote, and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of § 1129(a)(10).

**MM.**     **Feasibility (11 U.S.C. § 1129(a)(11))**.  The Allowed Claims in Classes 1, 2, and 3 are to be paid in deferred cash payments (Class 1 will receive a portion of the Milner Reserve on the Effective Date), in accordance with the terms of the Plan.  Under § 1129(a)(11), a plan must be feasible, and under the feasibility standard in the Fifth Circuit, a plan need only have a "reasonable probability of success." *Fin. Sec. Assurance Inc v. T–H New Orleans Ltd., P'ship (In re T–H New Orleans Ltd P'ship),* 116 F.3d 790, 801 (5th Cir. 1997) ("[T]he [bankruptcy] court need not require a guarantee of success . . . [o]nly a reasonable assurance of commercial viability is required." (citations omitted)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."); *Cajun Elec. Power Coop.,* 230 B.R. 715, 745 (Bankr. M.D. La. 1999); *In re Lakeside Global II Ltd.,* 116 B.R. 499, 506

(Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan").  The evidence proffered, adduced, and/or presented at the Confirmation Hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that the Plan is feasible.  Several witnesses testified or testified via proffer, including Milner, Cody Fortier (principal of Rigid Constructors, an Entity to be a 50% owner of NEWCO, and himself to be a manager of Reorganized Cape Quarry), Andre Smith (principal of Five S Group, an Entity to be a 50% owner of NEWCO, and himself to be a manager of Reorganized Cape Quarry); and Jeff Mizzi (the person who prepared the projections submitted to the Court identified in **Joint Parties Exhibit K**).  *See* **Joint Parties Exhibits L and M** (filed under seal) (balance sheets of Rigid Constructors and Five S Group, showing balance sheet equity of in excess of $40 million, which, according to the evidence presented at hearing, is materially correct as of the Confirmation Hearing).  Further, the NEWCO principals have placed $2 million into escrow to fund the Reserves, as defined in the Plan.  *See* **Joint Parties Exhibits T and U**. The Reorganized Debtor shall have sufficient liquidity and be able to meet its financial obligations under the Senior Creditors' Plan and in the ordinary course of business, and the confirmation of the Senior Creditors' Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor.  Thereby, the requirements of § 1129(a)(11) are satisfied.

NN.     **Payment of Fees (11 U.S.C. § 1129(a)(12))**.  Article 2.1.3 of the Plan provides that:

> With respect to amounts due to the Office of the United States Trustee, the Reorganized Debtor shall pay the appropriate sum required by 28 U.S.C.

§ 1930(a)(6) within thirty (30) days of the Effective Date. The Reorganized Debtor shall timely pay the to the United States Trustee any and all post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as these Bankruptcy Cases are converted, dismissed or closed by the Court.

Therefore, the Plan satisfies the requirements of § 1129(a)(12).

**OO.**     **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**. All retirement income plans and welfare benefit plans for such Continuing Persons, shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Reorganized Debtor, on the other hand, including to modify the "change of control" definition in such agreements to reflect the Restructuring Transactions and this Plan, and the Reorganized Debtor will continue to honor such agreements, arrangements, programs, and plans with all such Continuing Persons; provided that the foregoing shall not apply to any equity based compensation or incentive-based plan, agreement, or arrangement existing as of the Petition Date. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtor's defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Accordingly, the Plan satisfies the requirements of § 1129(a)(13).

**PP.**     **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**.  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, § 1129(a)(14) is inapplicable.

**QQ.**     **Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15))**.  The Debtor is not an individual. Accordingly, § 1129(a)(15) is inapplicable.

**RR.**     **No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))**.  The Debtor is a moneyed, business, or a commercial limited liability company. Accordingly, § 1129(a)(16) is inapplicable.

**SS.** **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))**.  Although Class 4 (Intercompany Claims), Class 5 (Contingent claims) and Class 6 (Existing Equity Interests) are rejecting Classes (the "Rejecting Classes") for purposes of § 1129(a)(8), the Plan is confirmable pursuant to § 1129(b) notwithstanding such rejection because, based upon the record before the Court and the treatment provided to such Claims and Equity Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Equity Interests, and the Plan satisfies all the requirements for confirmation set forth in § 1129(a), except § 1129(a)(8).  First, the Plan does not discriminate unfairly, because no Class of Claims or Equity Interests having similar legal rights to the Claims or Equity Interests in the Rejecting Classes is receiving different treatment under the Plan.

Second, the Plan is "fair and equitable" as to the Rejecting Classes because (a) no claims or interests junior to any of the Rejecting Classes will receive or retain any property under the Plan on account of such junior claims or interests.  Third, the neither the Debtor nor any Claim or Interest within the Rejecting Classes has objected to confirmation of the Plan.  The evidence in support of confirmation of the Plan proffered or adduced by the Debtor at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtor's classification and treatment of Claims and Equity Interests and the requirements for confirmation of the Plan under § 1129(b): (a) is reasonable, persuasive, credible, and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other credible evidence.  Based on the foregoing, the requirements of § 1129(b) are met with respect to the Rejecting Classes, and the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Classes.

TT.       <u>**Only One Plan is Confirmable (11 U.S.C. § 1129(c))**</u>.  The Senior Creditors' Plan is the only plan before the Court as discussed above.  The QA Plan was not confirmable under either § 1129(a) or § 1129(b).  Accordingly, because the Court denied confirmation of the QA Plan, § 1129(c) is inapplicable, or, put another way, the Senior Creditors' Plan is confirmable in accordance with § 1129(c).

UU.       <u>**Principal Purpose of the Plan (11 U.S.C. § 1129(d))**</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act.  The Plan comports with § 1145 of the Bankruptcy Code with respect to issuance of securities under the Plan.  *See* Plan, arts. 6.4, 6.5 & 15.4.  Accordingly, the Plan satisfies the requirements of § 1129(d).

VV.       <u>**Small Business Case (11 U.S.C. § 1129(e))**</u>.  This Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code.   Accordingly, § 1129(e) is inapplicable.

WW.       <u>**Good-Faith Solicitation (11 U.S.C. § 1125(e))**</u>.  Based on the record before the Court, including the record of the solicitation done by counsel for the Debtor and the Ballot Tabulations, the Debtor and the Examiner have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including §§ 1125(a) and (e), and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

XX.       <u>**Satisfaction of Confirmation Requirements**</u>.  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in § 1129.

**YY.** **Implementation**. All documents necessary to implement the Plan, including documents contained in the Plan Supplement and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtor, its Estate, and the Holders of Claims, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtor has exercised reasonable business judgment in its approach to the confirmation process. The Restructuring Transactions and the agreements that are conditions to the Effective Date have been presented to the Court, and ratified by NEWCO Holdings, Rigid Constructors and Five S Group (and the principals thereof), Milner, and MD Stone. The Senior Creditors Plan Proponents are authorized, without any further notice to, or action, order, or approval of, the Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan. The Court finds that there is no impediment to the occurrence of the Effective Date as defined under the Plan.

**ZZ.** **Good Faith of the Senior Creditors Plan Proponents**. The Senior Creditors Plan Proponents, the Debtor (and counsel therefor), NEWCO Holdings, the principals of NEWCO Holdings, and the principals of such principals have acted in good faith (a) in negotiating, formulating, and proposing the Senior Creditors' Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby; and (b) in soliciting acceptances to the Plan. In assessing the good faith standard, courts in the Fifth Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success." *See In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802; *Brite v. Sun Country Dev., Inv.*

*(In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985); *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 262 (Bankr. S.D. Tex. 2015); *In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. at 737.  And while good faith must be determined in light of the totality of the circumstances of the case, where a plan is proposed with the legitimate purpose of reorganizing and has a reasonable chance of success, the good faith requirement generally is satisfied.  *See In re Sun Country Dev., Inc.*, 764 F.2d at 408 ("The requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code to give debtors a reasonable opportunity to make a fresh start."); *Pub. Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983).

**AAA.** **Executory Contracts and Unexpired Leases**.  The Senior Creditors Plan Proponents have satisfied the provisions of 11 U.S.C. § 365 with respect to the assumption, assumption and assignment, and rejection of executory contracts and unexpired leases pursuant to Article X of the Plan.  Under the Plan, all executory contracts and unexpired leases subject to assumption or rejection under § 365 are rejected unless assumed, and the list of assumed contracts contains one agreement.  *See infra* Subpart HHH.

**BBB.** **Vesting of Assets**.  Pursuant to 11 U.S.C. §§ 1141(b)–(c), except as otherwise provided in the Plan or the Confirmation Order, (a) the property of the Estate and the Debtor and all Retained Actions shall vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, and interests to the maximum extent permitted by 11 U.S.C. § 363; and (b) all such Claims, Liens, and interests are extinguished, except as provided for in the Plan.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.  *See* **Joint Parties Exhibit H**.  Also, and notwithstanding the rejection of all executory contracts and unexpired leases subject to § 365 of the Bankruptcy Code, "Reorganized Cape

Quarry shall maintain all license and permit rights of Cape Quarry or as necessary to operate the business of Cape Quarry as of the Petition Date as of and after the Effective Date." *See* Plan, art. 13.1.

**CCC.** **Exit Loan Documents**. The Plan Supplement documents (when, and to the extent, entered into) shall be, and are hereby deemed to be, valid, binding, non-avoidable, and enforceable against the applicable Reorganized Debtor, NEWCO Holdings, and each guarantor under the Third Party Guarantees, including the security agreement and financing statement regarding the collateralization of the obligations under the Third Party Guarantees, in accordance with their terms and shall create and/or continue to create perfected, valid, binding, non-avoidable, and enforceable first priority Liens on, and security interests in, all of the Reorganized Debtor's assets that will secure the obligations under the Milner Post-Effective Date Loan and the Celtic Post-Effective Date Loan. The Confirmation Order shall be sufficient and conclusive evidence of the first priority, extent, perfection, validity, binding nature, non-avoidability, and enforceability of such Liens and security interests without the need for any further action. The prepetition guarantees of the Milner Prepetition Claim and the Celtic claim shall remain in full force and effect in accordance with the terms of the Senior Creditors' Plan. The Reorganized Debtor is authorized and directed to execute any and all documents provided to the Court or otherwise, including those documents contained within the Plan Supplement, as provided for in the Plan. The Holders of the Milner Post-Effective Date Loan and the Celtic Post-Effective Date Loan are authorized to file, with the appropriate authorities, financing statements, amendments to deeds of trust, and other documents, to take possession of or control, or to take any other action in order to evidence, validat,e and perfect such Liens or security interests, and the Debtor or Reorganized Debtor, as the case may be, are authorized and directed to take any action in support of such efforts.

**DDD.** <u>**New Constituent Documents**</u>.  The New Constituent Documents, as may be amended or modified without further approval from the Bankruptcy Court in accordance with their terms and applicable non-bankruptcy law, are essential elements of the Plan, were proposed in good faith, are critical to the success and feasibility of the Plan, and are necessary and appropriate for the consummation of the Plan.  Entry into the New Constituent Documents, and all related agreements and documents, is fair, reasonable, and in the best interests of the Debtor, its Estate, the Holders of Claims, and the Reorganized Debtor.  The New Constituent Documents are the product of good faith, arm's-length negotiations, and comply with the requirements of § 1126(e) of the Bankruptcy Code.  *See* **Joint Parties Exhibits A and B**.

**EEE.** <u>**Injunction, Exculpation, and Releases**</u>.  The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the injunction, exculpation, and releases set forth in Article XIII of the Plan, because, among other things, those provisions are an integral part of the Plan, and are necessary and appropriate for its implementation.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article XIII of the Plan if, as has been established here based upon the record in this Chapter 11 Case, the evidence presented at the Confirmation Hearing and the withdrawal of the UST Objection to Senior Creditors Plan, such provisions (a) were integral to the integrated and mutually dependent terms and conditions of the settlement among the various parties in interest embodied in the Plan and are important and essential to the formulation and implementation of the Plan, as provided in § 1123 of the Bankruptcy Code; (b) confer substantial benefits on the Debtor's Estate and creditors; (c) are fair, equitable and reasonable; and (d) are in the best interests of the Debtor, its Estate, and all parties in interest.  Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order

by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Based upon the record of this Chapter 11 Case, the evidence proffered or adduced at the Confirmation Hearing and this Court's oral ruling, this Court finds that the injunction, exculpation, and releases set forth in Article XIII of the Plan are consistent with the Bankruptcy Code and applicable law.

**FFF.** __Compromise and Settlement__. Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, or controversies resolved pursuant to the Plan. All Distributions made to creditors holding Allowed Claims (including the Class 3 Acceptance Notes) are intended to be, and shall be, final.

**GGG.** __Likelihood of Satisfaction of Conditions Precedent__. Each of the conditions precedent to the Confirmation Date and Effective Date, as set forth in Article XI of the Plan, will be satisfied in accordance with the provisions of the Plan prior to the Effective Date. At the Confirmation Hearing, the new constituent documents, the Milner Post-Effective Date Loan, the Celtic Post-Effective Date Loan, the Third Party Guarantees, the Security Agreement and UCC-1 Financing Statement to secure payment of the Third Party guarantees, were all ratified, and the Court concludes that the effective Date under the Plan, will occur as quickly as possible.

**HHH.** __Stay Abrogated__. The stay of effectiveness of the Confirmation Order provided for by Bankruptcy Rule 3020(e) should be abrogated, under the authority provided for by Bankruptcy Rule 3020(e), so that the parties can effectuate the terms of the Plan, including the closing of the Restructuring Transactions, and all loans, security agreements, guarantees new constituent documents assignments, etc., so as to facilitate the occurrence of the Effective Date under the Plan.

III.     **Independent Review of Findings of Fact and Conclusions of Law, and Confirmation Order**.  The Court requested draft proposed findings and conclusions and a draft confirmation order from the Senior Creditors' Plan Proponents ("Post-Hearing Submissions").  The Court has reviewed independently the Post-Hearing Submissions prior to issuance of these Findings of Fact and Conclusions of Law and the Confirmation Order, and where the Court has adopted any of the Post-Hearing Submissions, it is after careful and independent review.

JJJ.     **Confirmation Order**.  The Confirmation Order will be separately issued and entered on the docket of the record of this case.

New Orleans, Louisiana, November 16, 2020.

**MEREDITH S. GRABILL**
**UNITED STATES BANKRUPTCY JUDGE**